UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| INDIANA APARTMENT ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:10-CV-234-TLS |
| | ) | |
| CITY OF HAMMOND, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Plaintiff's Motion for a Preliminary Injunction [ECF No. 14], and Brief in Support [ECF No. 15], which it filed on February 28, 2011. The Plaintiff challenges the Defendant's new apartment registration fee ordinance as unconstitutional under the Commerce Clause in the United States Constitution, Art. I, sec. 8, and the Equal Privileges and Immunities Section of the Indiana Constitution, Art. I, sec. 23. The challenged ordinance charges different apartment registration fees based on whether the owner of an apartment building is a City of Hammond resident. For the foregoing reasons, the Court will grant the Motion.

On June 9, 2010, the Plaintiff filed this lawsuit challenging the Defendant's Ordinance No. 9060 [ECF No. 1]. The case proceeded through initial disclosures before the Plaintiff filed the Motion now pending before the Court. On March 3, 2011, the Court held a telephonic conference at which it set a briefing schedule. On March 16 the Defendant filed its brief in opposition [ECF No. 18] and on March 28 the Plaintiff replied [ECF No. 19]. At a telephonic conference on March 30 the parties advised the Court that they would not seek an evidentiary hearing to resolve the Plaintiff's Motion. On April 7 the Defendant filed a Notice of Filing

Amended Ordinance [ECF No. 21] with City of Hammond Ordinance 9100 attached, which amends the Ordinance at issue in this case. On April 25 the Plaintiff filed a Supplemental Brief Relating to City of Hammond's Amended Ordinance [ECF No. 24]. The Plaintiff's Motion is fully briefed and ripe for ruling.

The factual basis of this case is straightforward. On April 26, 2010, the City of Hammond passed Ordinance 9060.[1] The challenged portion of the Ordinance states, in part:

> (C) There shall be an $80 annual fee assessed for each apartment, rental dwelling or rental unit, due with the registration form which must be completed each year. There shall be a fee of $250 for every new apartment constructed after the ordinance goes into effect. An owner occupied building, as demonstrated by a current and accurate homestead exemption, in that homeowners individual name and not in the name of a trust, Limited Liability Company or Corporation, which contains multiple rental units in addition to the owner's primary full time residence, shall pay $20 per unit, per year for those additional units. Additionally, a rental dwelling, rental unit or apartment, owned by a Hammond homeowner, as demonstrated by a current and accurate homestead exemption, on that homeowners full time Hammond permanent residence, in that homeowner's individual name, shall pay $20 per year, per unit, with a limit of discounted 20 units, units over 20 shall be registered at the regular $80 rate

Simply, the Ordinance charges a different rental rate to Hammond residents than it does to non-Hammond residents. On March 29, 2011, the Defendant passed Ordinance No. 9100,[2] amending Ordinance 9060. Ordinance No. 9100 adds the following section relevant to this litigation:

> (I) The City intends to create an enforceable Ordinance which is compliant with all Federal and Local laws, in the event, that this Ordinance, or any part of it, or any provision, discount, amendment or any classification contained therein, is

---

[1] The Ordinance's full title is "An Ordinance Amending Ordinance 8327, Amended Ordinance 8570, Amended Ordinance 8603, Amended Ordinance 8666, and Amended Ordinance 8700, also knows as section 96.152 of the Hammond Municipal Code as it Pertains to Rental Registration in the City of Hammond."

[2] The Ordinance's full title is "An Ordinance Amending Ordinance 9060, 8327, Amended Ordinance 8570, Amended Ordinance 8603, Amended Ordinance 8666, and Amended Ordinance 8700, also knows as section 96.152 of the Hammond Municipal Code as it Pertains to Rental Registration in the City of Hammond and Student Housing."

> found to be unconstitutional, the remaining portion will remain in effect and will be found to be valid, and a single uniform rental registration fee, will be imposed for all rental units in the City of Hammond, and the discount will not be permitted under this Ordinance.

In addition to the text of the Ordinances, the parties have submitted various factual materials. These include the Affidavit of James W. Callahan, the Chief of Inspections for the City of Hammond [ECF No. 18-1] and Verified Declaration of Geoffrey Slaughter, counsel for the Plaintiff [ECF No. 19-1]. Mr. Callahan's Affidavit provides facts pertaining to the costs of code enforcement in Hammond and specifying the costs associated with "board ups,"[3] demolitions, "cut and clean" orders,[4] citations for property maintenance, nuisance properties, and parking issues, court proceedings, and preventing illegal activity. The Affidavit also provides that "[a]pproximately 80 percent of the emergency 'board ups' of rental units, conducted pursuant to Indiana's Unsafe Building law, are owned by non-Hammond residents," "at least 70 percent of illegally 'cut up,' substandard, and unsafe dwellings are owned by non-Hammond landlords," "at least 80 percent of unregistered rental properties are owned by non-Hammond landlords," "[a]t least 70 percent of the 'cut and clean' orders involve properties owned by non-Hammond Landlords," and "at least 80 percent of Hammond City Court citations for property maintenance, nuisance properties, and parking issues relate to rental units owned by non-Hammond landlords." (ECF No. 18-1 at 2–3.) Mr. Slaughter's Verified Declaration provides part of the history of his correspondence with the Defendant's counsel during this litigation. He states that

---

[3] "A 'board up' requires the City to cover all doors and windows of the property to prevent entry. The purpose of board ups is to prevent the property from being used by other persons as a haven for criminal activity." (ECF No. 18-1 at 2.)

[4] Hammond obtains "cut and clean" orders so it may "remove overgrown weeds, grass, and debris from rental units that are not properly maintained as required by law." (ECF No. 18-1 at 2.)

on December 6, 2010, he emailed the Defendant's counsel seeking a deferral of collecting the $80 fee until resolution of this ligation. (ECF No. 19-1 at 2.) Mr. Slaughter followed up on December 20, 2010, and on December 22, 2010, Anthony Overholt, the Defendant's counsel, responded that "I have asked the City and I will get back with you as soon as I get an answer." (ECF No. 19-1 at 2, 5.) That was the last communication between counsel about delaying enforcement of the Ordinance, until the Plaintiff filed its present Motion. Aside from these facts this case remains mainly a legal dispute about the constitutionality of the new Hammond ordinance setting annual apartment registration fees.

## ANALYSIS

In determining whether a situation merits a preliminary injunction, a district court conducts a two-phase analysis. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008). First, the threshold phase requires a party seeking the injunction to satisfy three requirements: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits." *Id.* at 1086 (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). If the moving party passes this threshold phase, the court moves to the balancing phase. *Id.*

Second, a court must attempt to minimize the cost of potential error by "balanc[ing] the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Id.* (quotation marks and citations omitted). Specifically, the court weighs the irreparable harm that

4

the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. *Id*. In so doing, the court employs a sliding scale approach: "'[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" *Id.* (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). Where appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on non parties. *Id.* Taking into account all these considerations, the district court must exercise its discretion "to arrive at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Id.*

A.      Likelihood of Success on the Merits

The Plaintiff argues that it is likely to prevail under the United States and Indiana Constitutions.[5] The basis for its United States Constitution claim is that the Ordinance violates the Commerce Clause by unnecessarily burdening non-Hammond residents' ability to participate in the Hammond rental market. The Defendant responds that the Ordinance serves a legitimate local purpose of covering the additional expenses imposed on the city by non-Hammond residents' participation in the rental market. Because the Ordinance does not appear to be the only means to advance a legitimate local purpose, the Plaintiff is likely to succeed on the merits of its federal constitutional claim.

---

[5] Because the Plaintiff is likely to prevail under the United States Constitution, the Court will not address the arguments presented under the Equal Privileges and Immunities Section of the Indiana Constitution Indiana Constitution, Art. I, sec. 23.

5

The United States Constitution article one, section eight, clause three states "[t]he Congress shall have power [t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes." This clause grants Congress the power to legislate, leaving the states free to legislate where Congress has not taken action. Limiting the states' ability in taking action the Court has "read the Commerce Clause to create not only affirmative powers to legislate, but also a negative implication that limits state action as well. As a result, the dormant Commerce Clause is invoked to scrutinize state regulations that burden interstate commerce, even in the absence of conflicting congressional legislation." *Endsley v. City of Chi.*, 230 F.3d 276, 284 (7th Cir. 2000) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979); *Southern Pac. Co. v. Arizona*, 325 U.S. 761, 769 (1945); *Gibbons v. Ogden*, U.S. (9 Wheat) 1, 199-200 (1824)). In reviewing a Commerce Clause challenge the first inquiry is whether the challenged provision discriminates on its face against interstate commerce. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). Discrimination in the Commerce Clause context "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* (quoting *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994); *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988)). "Discriminatory laws motivated by simple economic protectionism are subject to a virtually per se rule of invalidity, which can only be overcome by a showing that the State has no other means to advance a legitimate local purpose." *Id.* at 338–39 (citations and quotation marks omitted).

The Ordinance discriminates on its face against non-Hammond residents. The Plaintiff cites *Homier Distributing Co., v. City of New Bedford*, 188 F. Supp. 2d 33 (D. Mass 2002),

where the court declared a similar ordinance unconstitutional under the dormant commerce clause. In *Homier Distributing Co.,* the City of New Bedford, Massachusetts, imposed a regulatory licensing scheme on transient vendors that desired to do business in the city. *Id.* at 35. The court struck down the ordinance as discriminatory on its face and also held that deposition testimony in the case evidenced that the ordinance had a discriminatory purpose as well. *Id.* at 37. The Defendant argues that the Ordinance "serve[s] legitimate local purposes, and these purposes could not be served as well by available nondiscriminatory means." (Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. 2, ECF No. 18.) The Defendant distinguishes *Homier Distributing Co.* by arguing that it, unlike the city in that case, had a legitimate purpose for enacting the ordinance. Relying on Mr. Callahan's Affidavit, the Defendant argues four legitimate purposes for the ordinance: at least eighty percent of board ups are for units owned by non-Hammond residents; at least seventy percent of cut up dwellings are owned by non-Hammond residents; at least eighty percent of unregistered rental properties are owned by non-Hammond residents; and at least seventy percent of the cut and clean orders involve properties owned by non-Hammond residents. The Defendant does not, however, provide what percentage of rental units overall are owned by non-Hammond residents. If non-Hammond residents own seventy to eighty percent of rental properties in Hammond then the statistics provided in Mr. Callahan's affidavit do not provide a legitimate purpose for discrimination. There also appears to be an available nondiscriminatory means for accomplishing the city's goal—charging all rental property owners the same fee.[6] Because the Defendant has not provided a legitimate purpose for the Ordinance's

---

[6] There are also likely other nondiscriminatory means for accomplishing the city's goal, such as charging for board-ups, cut ups, and cut and clean orders, as the city incurs the expenses. The Court does not need to review all potential nondiscriminatory means available to the city, it simply must find that the Defendant has failed to

discrimination and there appears to be a nondiscriminatory means for accomplishing the Defendant's purpose, the Plaintiff is likely to succeed on the merits.

**B.     Inadequate Remedy at Law**

The Plaintiff argues that it is an association and is therefore barred from seeking damages on behalf of its members. Thus, it has no adequate remedy at law to redress any injuries resulting from the enforcement of an unconstitutional ordinance. The Defendant responds that money damages—in the form of refunding the unconstitutional portion of any fee—are available to the Plaintiff's members so an adequate remedy at law exists. The Plaintiff replies that it is the only party in the case—not its members—leaving it with no remedy available at law. The Court finds that because the Plaintiff may only seek prospective relief, it lacks an adequate remedy at law and this factor weighs in the Plaintiff's favor.

An association does not have standing to bring a suit for claims of monetary damages. *Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 923 (7th Cir. 1995).[7] The Plaintiff relies on its inability to seek monetary damages to establish that it has no remedy at law. *Cf. Gov't Suppliers Consolidating Servs. Inc. v. Bayh*, 734 F. Supp. 853, 863 (S.D. Ind. 1990) ("The plaintiffs do not seek money damages and, indeed, are barred from recovering damages from the

---

demonstrate that it has no other means to advance its legitimate local purpose.

[7] An association has standing to bring a lawsuit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Sanner*, 62 F.3d at 922 (quoting *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). The Defendant does not challenge—and the record does not necessitate the Court review sua sponte—the Plaintiff's standing for prospective relief in this case. However, because the third prong of the association standing inquiry is relevant to the adequate remedy at law discussion, the Court will review it.

state due to the doctrine of sovereign immunity and the eleventh amendment to the Constitution. Thus, the plaintiffs have no adequate remedy at law.") (internal citations omitted). The Defendant relies on two cases in arguing that when an association's members may seek damages there is an adequate remedy at law, notwithstanding the association's inability to seek damages on behalf of its members. *See Houston Ass'n of Alcoholic Beverage Permit Holders v. City of Houston*, 508 F. Supp. 2d 576, 586 (S.D. Tex. 2007) (denying a preliminary injunction because the plaintiffs—including a trade association and some of its members—failed to demonstrate the inadequacy of monetary damages); *Sec. Indus. & Fin. Markets Ass'n v. Garfield*, 469 F. Supp. 2d 25, 41 (D. Conn. 2007) (noting that an association would not suffer irreparable harm where the alleged loss was compensable to the association's members). The Plaintiff distinguishes both of the cases the Defendant cites. The Plaintiff distinguishes *Houston Association of Alcoholic Beverage Permit Holders* by noting that the Association's members were also parties to the lawsuit. The Plaintiff argues that the portion of *Securities Industry & Financial Markets Association* that the Defendant cites is dicta, because the court in that case resolved the preliminary injunction based on the irreparable harm that would be caused by the disclosure of confidential information.

Where a party may only seek prospective relief and may not recover monetary damages it lacks an adequate remedy at law. For example, in a case dealing with prospective relief under *Ex parte Young* the United States Court of Appeals for the Sixth Circuit held that where a plaintiff is limited to prospective injunctive relief only, waiting to decide the case while the alleged harm occurs may deny a plaintiff a "timely and adequate remedy." *GTE North, Inc. v. Strand*, 209 F.3d 909, 922 (6th Cir. 2000). The only party in this case is the association unlike *Houston*

*Association of Alcoholic Beverage Permit Holders* where some of the association's members were part of the case. While the court in *Securities Industry & Financial Markets Association* noted "[the association] and its member organizations will not be irreparably harmed in the absence of an injunction because the loss of state contracts is compensable," this was in the context of framing the privacy issue where the court found irreparable harm. *Securities Indus. & Fin. Markets Ass'n*, 469 F. Supp. 2d at 41. This portion of the court's opinion cannot be read as establishing an adequate remedy at law where a party may only pursue prospective relief. *Id.* The Plaintiff lacks an adequate remedy at law to recover for any harm resulting from the enforcement of an unconstitutional ordinance. With no adequate remedy at law, this factor of the preliminary injunction analysis weighs in the Plaintiff's favor.

### C.    Irreparable Harm

The Plaintiff argues that an ongoing violation of constitutional rights constitutes irreparable harm when considering a motion for preliminary injunction. The Defendant responds that the Plaintiff has not shown that any "personal" constitutional rights are implicated, thus, any constitutional violations are not causing irreparable harm.[8] "A harm is 'irreparable' if it 'cannot be prevented or fully rectified by the final judgment after trial.'" *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1087 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th

---

[8] The Defendant also initially argued that the Plaintiff's delay in filing this Motion defeats the need for a preliminary injunction. The Plaintiff replied that the Defendant seemed to have unintentionally misstated the facts. In his Verified Declaration [ECF No. 19-1] Attorney Slaughter declares that he attempted to work out an agreement deferring collection of the higher fee until the resolution of this case, but never heard back from the City about this potential agreement. The delay in waiting to hear from the city explains the Plaintiff's delay in filing its Motion for Preliminary Injunction. On March 30, 2011, the Court held a telephonic status conference at which the Defendant stated that the Court should rely on the Plaintiff's recollection of the facts. With the facts about the Plaintiff's delay clarified, the Defendant's argument about the Plaintiff's delay in filing this Motion is moot.

Cir. 1984)). Determining what constitutes irreparable harm requires courts to consider the nature of the alleged injury, what redress a court may eventually provide, and the plaintiff's likelihood of success on the merits. *Judge v. Quinn*, 612 F.3d 537, 536 (7th Cir. 2010); *Girl Scouts of Manitou Council,* 549 F.3d at 1087; *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1018 (7th Cir. 1990). Certain constitutional violations, such as the loss of First Amendment rights "for even minimal periods of time, unquestionably constitutes irreparable injury." *Somerset House, Inc.*, 900 F.2d at 1018. Other injuries that allow the Court to provide full remedies are less likely to establish an irreparable harm. The more likely a party is to succeed on the merits the lower its burden is to establish an irreparable injury will occur without a preliminary injunction. *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086.

The alleged injury in this case is a violation of Article I, Section 8 of the United States Constitution (the Commerce Clause). The alleged constitutional violation requires that current non-Hammond residents pay higher annual fees on apartments they own. Given the Plaintiff's likelihood of success on the merits, it has a lower burden of establishing an irreparable injury, thus, a small showing of irreparable harm will satisfy this factor. The Plaintiff is an association, and as such may not seek money damages on its members' behalf. *Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 923 (7th Cir. 1995). The inability to recover fees paid pursuant to the Ordinance if the injunction does not issue combined with the likelihood of success on the merits place the irreparable harm factor in the Plaintiff's favor.

**D.     Balancing**

The Court must "balance the nature and degree of the plaintiff's injury, the likelihood of

11

prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086. The nature and degree of the Plaintiff's injury is straightforward, while the Ordinance is in effect its members must annually pay sixty dollars more than apartment owners that are City of Hammond residents. As discussed above, the Plaintiff is likely to succeed on the merits. The Defendant faces a potential temporary injury if the Court grants the injunction. The Amended Ordinance provides that if a court finds the Ordinance unlawful, all apartment owners must pay the eighty dollar fee. Thus, the only potential harm to the Defendant would be the lost revenue from any annual fees due between the issuance of a preliminary injunction and the resolution of this case. Finally, the public interest in this case is the same as the Defendant's interest, the interest in having city ordinances apply to the extent they are constitutional. The equities balance in favor of the Plaintiff when considering its likelihood of success on the merits and inability to recover remitted payments balanced with the Defendant's ability to collect the higher fee if it prevails in this case.

## CONCLUSION

The Court GRANTS the Plaintiff's Motion for a Preliminary Injunction [ECF No. 14]. Accordingly, the Defendant, City of Hammond, Indiana, is enjoined from enforcing City of Hammond Ordinance Number 9100, Section (C) to the extent it requires non-Hammond residents to pay an eighty dollar fee where a City of Hammond resident would only be required to pay a twenty dollar fee.

SO ORDERED on June 16, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION